IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRY COOPER,                          :
     Petitioner
                          :

     vs.                               :   CIVIL NO. 1:CV-04-2577

PENNSYLVANIA BOARD OF                  :
PROBATION AND PAROLE, and
GERALD J. PAPPERT, Attorney            :
General of Pennsylvania,
     Respondents                       :


*M E M O R A N D U M*

I.   *Introduction.*

     Petitioner, Harry Cooper, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Pennsylvania Board of Probation and Parole ("the Board") to deny him parole on his conviction for rape.  He seeks immediate release from confinement.

     In his petition, he presents two claims under the Ex Post Facto Clause of the federal Constitution.  First, the Board applied statutory changes to the parole law made in 1996 relating to the Board's substantive decision-making to an offense he committed earlier, resulting in an increase in his incarceration.  Second, before 1996, parole could be granted by a vote of only two members of the Board, but since then five

members have to vote for parole before a violent offender can be granted parole.

In his traverse, he is more specific about the first ex post facto claim.  He asserts that since 1996 the new parole policy has lengthened the time that sex offenders, not just convicts in general, must remain in prison and that the statistics would support this claim if we required the respondent Board to produce them.  He has also made two new claims.  He claims that his conduct in prison, in regard to behavior and program accomplishments, entitles him to parole under the applicable law and that the prison's records dealing with him would bear this out.  He also claims that he has been denied parole in retaliation for the exercise of First Amendment rights, alleging, among other things, that he has been retaliated against for having successfully obtained a court order for family visits and for having filed a prison grievance about a threat from his prison counselor that he not seek a reduction in sentence through the courts.[1]

---

[1]  Since the traverse expanded on the claims in the 2254 petition and added new ones, in an order of March 24, 2005, we treated the traverse as a motion to amend the 2254 petition and allowed Respondent an opportunity to oppose amendment.  Under Fed. R. Civ. P. 15(a), we will allow these claims to proceed since we discern no prejudice to Respondent from Petitioner's raising them this early in the litigation.  *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

II.    Background.

        Cooper is currently serving a sentence of nine to
eighteen years for the crimes of rape and involuntary deviate
sexual intercourse, imposed by the Court of Common Pleas of
Philadelphia County on July 26, 1990.  The original sentence was
vacated, and Cooper was re-sentenced on December 18, 2003, for
the same length of sentence, but with a new maximum expiration
date of August 16, 2007.  (Doc. 13, Ex. A, Decl. of Allen
Castor, Board member and former chairman, ¶ 17; Ex. 1, Sentence
Status Summary).  Cooper has served about fifteen years on the
conviction.

        The Board has considered Cooper for parole six times:
July 20, 1998, February 14, 2000, March 1, 2001, May 7, 2002,
March 19, 2003, and March 30, 2004. (*Id.*, Ex. A, Castor Decl.,
¶¶ 18-24; Exs. 2-8, Board decisions).  All of these Board
decisions were by a unanimous vote of a panel of two members.
(*Id.*, Ex. A, Castor Decl., ¶¶ 18-24).  Cooper's next review is
scheduled for August 2005.

        In denying parole, in 1998 and 2000 the Board cited
the need to protect the safety of the public and in 1998 through
2002 it cited the fair administration of justice.  In 2003 and
2004, these considerations were not mentioned; instead the Board
relied on Cooper's "best interests" and the "interests" of the
commonwealth.  All of the decisions noted the need for Cooper to

successfully complete a treatment program for sex offenders.  In

2003 and 2004, the need to complete a Phase II sex offenders

program was mentioned and in 2003, a "Phase III, Maintenance/

Relapse Program."

        The most recent Board decision, on March 30, 2004,

read as follows:

> Following an interview with you and a review
> of your file, and having considered all
> matters required pursuant to the Parole Act
> of 1941, as amended, 61 P.S. § 331.1 et
> seq., the Board of Probation and Parole, in
> the exercise of its discretion, has
> determined at this time that: your best
> interests do not justify or require you
> being paroled/ reparoled; and the interests
> of the Commonwealth will be injured if you
> were paroled/reparoled.  Therefore, you are
> refused parole/reparole at this time.   The
> reasons for the Board's decision include the
> following:
>
> The recommendation made by the Department of
> Corrections.
>
> Your need to participate in and complete
> additional institutional programs.
>
> You will be reviewed in August, 2005, or
> earlier, if recommended by the Department of
> Corrections.
>
> At your next interview, the Board will
> review your file and consider:
>
> Whether you have successfully completed a
> treatment program for: sex offenders, phase
> II

4

>           Whether you have received a favorable
>           recommendation for parole from the
>           Department of Corrections.

(Doc. 13, Ex. 8 to Ex. A).


III. *Discussion*.

    A.  *Exhaustion of State-Court Remedies*.

    Cooper's challenge to his parole denial is cognizable under 28 U.S.C. § 2254, *Coady v. Vaughn*, 251 F.3d 480, 484-85 (3d Cir. 2001), which requires exhaustion of available state-court remedies before filing a 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A). The only claims subject to such an exhaustion requirement are his ex post facto claims. In *DeFoy v. McCullough*, 393 F.3d 439, 445 (3d Cir. 2005), the Third Circuit decided that a Pennsylvania inmate has no available state-court remedies for parole denial to exhaust except for an ex post facto claim, which can be pursued in state court by a mandamus petition. Hence, a Pennsylvania inmate can proceed directly to federal court on a habeas petition from a Board denial of parole unless he is bringing an ex post facto claim.

    Cooper did not seek mandamus in the state courts on his ex post facto claims, but his failure to exhaust does not bar those claims because it would have been futile for him to have done so. Under section 2254(b)(1), exhaustion is excused

if a petitioner's invocation of a state-court avenue of relief would be futile.  *Lines v. Larkins*, 208 F.3d 153, 162 (3d Cir. 2000).  In *Lines,* the Third Circuit observed that "'[f]utility exists where: 'a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field.'"  *Lines*, 208 F.3d at 162 (quoting *Allen v. Attorney General of Maine*, 80 F.3d 569, 573 (1st Cir. 1996)).[2]

In March 2004, when Cooper's parole was last denied, Pennsylvania Supreme Court cases rejected as a matter of law any claim that the Board's discretionary authority over parole violated the federal Ex Post facto Clause.  *See Cimaszewski v. Bd. of Prob. & Parole*, ___ Pa. ___, ___, 868 A.2d 416, ___ (2005).  That was only recently changed in *Cimaszewski* when it overruled *Finnegan v. Pennsylvania Board of Probation & Parole*, 576 Pa. 59, 838 A.2d 684 (2003).  Hence, it would have been futile for Petitioner to have sought mandamus relief in the state courts on his ex post facto claims.  We will therefore address the merits of all his claims.

---

[2]  The words *futile* and *futility* do not appear in the statute, but the courts use these terms in connection with the words of section 2254(b)(1)(B)(ii) that excuse exhaustion when "circumstances exist that render such process ineffective to protect the rights of the applicant."  *See Lines, supra*, 208 F.3d at 162.

B.  *The Ex Post Facto Claim Based on the Use of
the 1996 Statutory Changes.*

In pertinent part, the Ex Post Facto Clause, U.S.
Const. Art. I, § 10, cl. 1, bars a change in law that
retroactively increases the punishment for a crime after its
commission.  *Garner v. Jones*, 529 U.S. 244, 249-50, 120 S.Ct.
1362, 1367, 146 L.Ed.2d 236, 244 (2000).  The clause covers a
change in state regulatory rules, even if the rules deal with an
agency's substantive discretion in making the decision to
parole.  *Id.* at 250, 253, 255, 120 S.Ct. at 1367, 1369-70, 146
L.Ed.2d at 244-47.  The ex post facto issue in this context is
one of "particular difficulty," given the paroling agency's
discretion.  *Id.* at 250, 120 S.Ct. at 1367, 146 L.Ed.2d at 244.
Nonetheless, if the change in the law, either on its face, or in
its "practical implementation" "creates a significant risk of
increasing [the inmate's] punishment" in comparison to the
previous rule, *id.* at 255, 120 S.Ct. at 1370, 146 L.Ed.2d at
247, the Ex Post Facto Clause forbids its enforcement against
the inmate.  *Id.*, 120 S.Ct. at 1370, 146 L.Ed.2d at 247.

In 1996, the Pennsylvania legislature amended the
section of its parole law setting forth the public policy of the
commonwealth toward parole.  In pertinent part, the amendment
changed the statutory section to include the following: "the
board shall first and foremost seek to protect the safety of the

7

public."  61 P.S. § 331.1 (Purdon's 1999).  Before then, section

331.1 made no mention of public safety and in fact declared the

public policy of the state to be that parole would be a period

of rehabilitation of an inmate and his restoration to society,

aided and facilitated by the parole administration.[3]

---

[3]  After amendment, section 331.1 reads in full:

> The parole system provides several
> benefits to the criminal justice system,
> including the provision of adequate
> supervision of the offender while protecting
> the public, the opportunity for the offender
> to become a useful member of society and the
> diversion of appropriate offenders from
> prison.

> In providing these benefits to the
> criminal justice system, *the board shall
> first and foremost seek to protect the
> safety of the public*.  In addition to this
> goal, the board shall address input by crime
> victims and *assist in the fair
> administration of justice* by ensuring the
> custody, control and treatment of paroled
> offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).  Formerly,
section 331.1 read as follows:

> The value of parole as a disciplinary and
> corrective influence and process is hereby
> recognized, and it is declared to be the
> public policy of this Commonwealth that
> persons subject or sentenced to imprisonment
> for crime shall, on release therefrom, be
> subjected to a period of parole during which
> their rehabilitation, adjustment and
> restoration to social and economic life and
> activities shall be aided and facilitated by
> guidance and supervision under a competent
> and efficient parole administration, and to

Petitioner does not cite the case, but his argument tracks the analysis in *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003).  Applying the ex post facto principles set forth above, the Third Circuit ruled in *Mickens-Thomas* that the Board had violated petitioner Mickens-Thomas's ex post facto rights by refusing him parole after his life sentence for murder had been commuted by the governor.  The court found that the 1996 change to section 331.1 had prompted the Board to adopt policies that made public safety the predominant concern in making parole decisions.  Before this change public safety had been just one factor, among others, to be considered.  *Id.* at 385.[4]  Further, the change had increased Mickens-Thomas's punishment, as shown in part by the fact that parole guidelines and other criteria in effect before the 1996 amendment indicated that parole should have been granted.  *Id.* at 387-88.  The court of appeals ordered that the Board review Mickens-Thomas under pre-1996 parole rules.  In two later, nonprecedential opinions, *McLaurin v. Larkins*, 76 Fed. Appx. 415 (3d Cir. 2003), and *Hollawell v.*

---

that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

[4]  As further support for this conclusion, the court noted that Mickens-Thomas was the first inmate of 266 to have been denied parole after a life sentence had been commuted.  *Id.*

*Gillis*, 65 Fed. Appx. 809 (3d Cir. 2003), the Third Circuit extended *Mickens-Thomas* to inmates convicted of other crimes.

Cooper argues that the Board likewise violated his ex post facto rights by using its post-1996 parole criteria to deny him parole.  In opposition, the Board contends that Petitioner has no *Mickens-Thomas* ex post facto claim because his last two parole reviews occurred on March 19, 2003, and March 30, 2004, well after the Pennsylvania Supreme Court decided *Winklespecht v. Pennsylvania Bd. of Prob. & Parole*, 571 Pa. 685, 813 A.2d 688 (2002).  In *Winklespecht*, a majority of the court agreed that the 1996 changes to section 331.1 had not substantively altered the criteria for parole since "'protect[ing] the safety of the public'" and "'assist[ing] in the fair administration of justice'"[5] had always been considerations in the parole process.  571 Pa. at 691, 813 A.2d at 692.  The additional language had merely "clarified the policy."  *Id.*, 813 A.2d at 692.

The significance of *Winklespecht*'s timing is that thereafter the Board would supposedly know that the 1996 statutory change had not substantively altered Pennsylvania parole law.  Hence any parole decision made after *Winklespecht* would not have been made with this erroneous understanding of

---

[5]   This was another 1996 change in the language.  As noted above, it also appeared in the Board decisions for Cooper from 1998 through 2002.

the parole law.[6]  This point was rejected in *Mickens-Thomas* because *Winklespecht* had been decided after Mickens-Thomas's parole review and thus too late to affect the Board's decision. 321 F.3d at 391.  However, it has been considered dispositive in other cases where the Board decision came after *Winklespecht*, and when the Board had also relied on pre-1996 parole criteria. *See Tucker v. Patrick*, No. 3:CV-04-1232, slip op. at 10 (M.D. Pa. Dec. 7, 2004)(Vanaskie, C.J.); *Grob v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); *Sphar v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J); *Schaeffer v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-1159, slip op. at 8 (M.D. Pa. Oct. 26, 2004)(Munley, J.).  *See also Johnson v. Lavan*, 2004 WL 1622051 (E.D.)(adopting magistrate judge's report at 2004 WL 1291973 *4-5).  *Accord Fripp v. Meyers*, 2004 WL 2915299 at *7-9 (E.D. Pa.)(rejecting ex post facto claim on a pre-*Winklespecht* Board decision when the Board had used pre-1996 criteria to deny parole); *Dolan v. Klem*, 2005 WL 1154757 (M.D. Pa.)(Rambo, J.); *Sanders v. Patrick*, 2005 WL 1155035 (M.D. Pa.)(Kane, J.).  *But see Adams v. Kelchner*, 2004 WL 2634357 at

---

[6]   In fact, Board member Castor affirms that both before and after *Winklespecht*, the Board never considered the statutory changes as affecting its parole decision-making authority. (Doc. 13, Ex. A, Castor Decl., ¶ 5).

*8-10 (M.D. Pa.)(Conaboy, J.)(in the absence of affirmative evidence indicating that the post-*Winklespecht* Board decision had been made using pre-1996 criteria and under no influence of the erroneous understanding of the 1996 statutory changes, court remanded for new hearing under the old parole criteria, citing *Hollawell, supra*, and *Hart, supra*); *Pisa v. Pa. Bd. of Prob. & Parole*, No. 4:CV-04-1079, slip op. at 11-12 (M.D. Pa. Nov. 18, 2004)(McClure, J.)(following *Adams*).

We are in agreement with the majority view, *see Palumbo v. Kelchner*, No. 1:CV-04-0891 (M.D. Pa. Dec. 29, 2004)(Caldwell, J.), and thus find no ex post facto violation here.[7]  We need address the ex post facto challenge only as it relates to the most recent parole denial of March 30, 2004.  *See Johnson, supra,* 2004 WL 1291973 at *4 n.4; *Shaeffer, supra,* slip op. at 5 (finding that although Petitioner challenged seven denials of parole, the challenges to the first six denials were rendered moot by the fact that subsequent parole hearings were conducted).

In doing so, we find both elements for rejecting an ex post facto claim satisfied here.  First, the March 30, 2004,

---

[7]  We find *Hollawell* and *Hart* distinguishable because they dealt with pre-*Winklespecht* Board decisions, unlike the courts in *Adams* and *Pisa,* which decided that *Winklespecht*'s timing was irrelevant.

decision came well after *Winklespecht* was decided on December

31, 2002.  Second, the decision relied on pre-1996 parole

criteria.  The reasons for denying parole were: (1) Petitioner's

"best interests"; (2) "the interests of the Commonwealth"; (3)

"the recommendation made by the Department of Corrections"; and

(4) Petitioner's "need to participate in and complete additional

institutional programs," specifically, a treatment program for

sex offenders.  These reasons were appropriately considered in

parole decisions before 1996 and merit denial of parole under

any pre-1996 standard.  *See Reynolds v. Pa. Bd. of Prob. &*

*Parole*, 809 A.2d 426, 433 n.9 (Pa. Commw. 2002)(recommendations

of wardens and superintendents); *Mickens-Thomas, supra*, 321 F.3d

at 385 (program adjustment and public safety).[8]  We therefore

---

[8]  As *Mickens-Thomas* noted, 321 F.3d at 385, the 1989
Manual of Operations and Procedures stated that:

> in considering an inmate for parole, the
> Board must 'weigh[ ] numerous factors
> relative to the welfare of the client and
> the safety of the community,' including
> seriousness of the offense; length of the
> sentence; institutional adjustment (behavior
> and program adjustment); and assessment of
> the effect of rehabilitation services while
> incarcerated.  Whether the individual can be
> safely supervised in the community,
> personality characteristics, any history of
> family violence, strength of the parole plan
> (home and employment), testimony from
> victims, and opinions of the sentencing
> judge and prosecuting attorney must also be
> considered.

conclude there is no ex post facto violation from the 1996

substantive changes to the parole law, even on Petitioner's

narrower claim involving sex offenders.

> C.   *The Ex Post Facto Claim Based on*
> *a Supposed Change That Now Prohibits*
> *Parole for a Violent Offender Unless*
> *Five Members of the Board Agree*.

Petitioner has also made an ex post facto challenge to

an alleged change in parole law or policy that now prohibits

parole for a violent offender unless five members of the Board

agree instead of just two members agreeing.

Petitioner has not cited any support for his

contention that the Board now requires five members to agree

before a violent offender can be paroled.  Respondent points out

that the Board has a policy that a violent offender needs the

votes of three members of a panel before he can be paroled.  *See*

*Myers v. Ridge,* 712 A.2d 791, 796-97 (Pa. Commw. 1998)(cited in

*Finnegan, supra*, 576 Pa. at ___, 838 A.2d at 690).

In any event, there is no ex post facto violation in

the circumstances here.  All of the Board's decisions denying

Cooper parole were by the unanimous vote of a two-member panel,

in accord with statutory authority effective October 9, 1986.

*See* 61 P.S. § 331.4 (Purdon's 1999).  Hence, since no new law

was applied to Cooper, he fails to establish an essential

element of an ex post facto claim.  *Mickens-Thomas, supra*, 321

14

F.3d at 384 ("A new law or policy violates the Ex Post Facto clause" when it is "'applied to events occurring before its enactment'")(quoted case omitted); *see also Reynolds, supra*, 809 A.2d at 433-34 (rejecting the inmate's federal ex post facto violation that five Board members now had to vote for parole when his parole denial was in accord with the statutory two-member requirement).

     D.  *Retaliation Claim.*

Petitioner also argues that he was denied parole in retaliation for his exercise of the following constitutional rights.  First, he was successful in asserting his First Amendment right to family association when he obtained a court order "directing Agents of Respondent" to allow two family members onto his visiting list.  Second, Respondent's agent, Mr. Hoover, the prison counselor for the sex offender's program, attempted to discourage Respondent from seeking a (successful) sentence reduction and thereby tried to deny him access to the courts.  Third, Cooper filed a prison grievance about Respondent's agent, Hoover (concerning conduct described above), including Hoover's attempt to have Petitioner discuss legal issues in group settings and Hoover's looking at Petitioner's mail. (Doc. 15, Traverse, p. 4).  Cooper also believes he has a retaliation claim because of the following:

> Filing false parole review reports with the
> Respondent Parole Board, by the agent of the
> Respondent in retaliation for the
> petitioner's success in the court, success
> at getting a Court Order for visitation with
> his family, and grievance alleging abuse.
> Here, petitioner does not have direct proof,
> but relies on the fact that Respondent
> requested a subsequent parole review report,
> after the one submitted by this agent was
> contradicted by petitioner during parole
> interview.  He reported petitioner was in
> denial of his crime; petitioner's promotion
> to level 3 of the Sex Offender's program
> proved he was not in denial.  [Petitioner
> pled guilty at trial]

(*Id.*, pp. 4-5 and attached exhibits).

A federal court can review denial of parole when the denial was in retaliation for the prisoner's exercise of his constitutional rights.  *Burkett v. Love*, 89 F.3d 135, 140 (3d Cir. 1996).  However, Cooper's allegations are not sufficient for a retaliation claim.  In the first three sets of allegations (and probably in the fourth as well) Cooper is complaining about Hoover's conduct, but Hoover is not the agent of the Board ("an independent administrative board," 61 P.S. § 331.2), as Petitioner alleges, but an employee of the Department of Corrections.  Hoover's conduct cannot be ascribed to the Board.  Further, the fourth set of allegations, where Cooper alleges that the Board independently investigated its "agent's" claim that he was in denial of his crime, rebuts his assertion that the Board acted in a retaliatory way.

16

E.   *The Claim That Petitioner Is Entitled
     to Parole Under the Applicable Law.*

Petitioner also claims he has met the criteria for

parole.  However, we can review a parole decision only in

limited circumstances; as noted above, (1) when the denial was

in retaliation for the exercise of constitutional rights, (2)

when the denial was based on reasons prohibited by the federal

constitution such as race, religion, or political beliefs, and

(3) when the denial was based on totally arbitrary reasons.

Here, we have already disposed of the first ground,

and Petitioner advances no facts in support of the second or

third.  We cannot grant relief simply because we might have

decided the parole issue differently.  *See Coady, supra,* 251

F.3d at 487 (rejecting subtantive due-process claim).


IV.   *Conclusion.*

We will deny the petition.  We will also deny a

certificate of appealability, based on the above analysis.

However, Petitioner is advised that he has the right for thirty

(30) days to appeal our order denying his petition, *see* 28

U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our

denial of a certificate of appealability does not prevent him

from doing so, as long as he also seeks a certificate of

appealability from the court of appeals.  *See* Federal Rule of

Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.


                                   /s/William W. Caldwell
                                   William W. Caldwell
                                   United States District Judge

Date: June 3, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRY COOPER,                      :
          Petitioner
                                   :

          vs.                      :   CIVIL NO. 1:CV-04-2577

PENNSYLVANIA BOARD OF              :
PROBATION AND PAROLE, and
GERALD J. PAPPERT, Attorney        :
General of Pennsylvania,
          Respondents              :


*O R D E R*


          AND NOW, this 3rd day of June, 2005, it is ordered

that:

          1.  The petition (doc. 1) for writ of
          habeas corpus is denied.

          2.  A certificate of appealability is
          denied.

          3.  The application (doc. 2) to proceed
          in forma pauperis is granted.

          4.  The Clerk of Court shall close this
          file.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge